UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK DAMON HILDRETH,<br><br>   Plaintiff,<br><br>   v.<br><br>BARACK OBAMA et al.,<br><br>   Defendants. | Civil Action No.  12-1099 (JDB) |

## MEMORANDUM OPINION

In the instant action, Plaintiff Mark Damon Hildreth, proceeding pro se, claims that President Barack Obama defrauded him out of $731 million by failing to compensate him for the research assistance he allegedly provided to end the British Petroleum ("BP") Deepwater Horizon oil spill in the Gulf of Mexico in 2010. Hildreth alleges that he was responding to a request from President Obama and his administration (hereinafter "defendants") for solutions to the oil spill, and that his scientific research about oil well caps was subsequently used to stop the spill. In response, defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7, arguing that Hildreth fails to state a claim upon which relief can be granted. Defendants also argue that the complaint should be dismissed based on sovereign immunity. Hildreth has filed an opposition to the motion to dismiss, and defendants have not filed a reply. Upon consideration of the parties' submissions, the Court will grant defendants' motion to dismiss.

### I.  BACKGROUND

Hildreth claims that he deserves compensation for his scientific research into the Deepwater Horizon oil spill that occurred in the Gulf of Mexico in April 2010. See Compl.

1

[Docket Entry 1] at 4 (July 3, 2012).¹ Working in part under the auspices of his non-profit organization, Nevada Community Development Corporation, Hildreth claims to have conducted his research in response to the President's request for solutions on how to stop the damaged oil well from leaking, and he argues that this research ultimately helped end the spill. See id.  In particular, Hildreth maintains that his research showed that the spill involved a "heavy sewage leak problem" best handled by the York City Water and Sewage Department, which he asserts was capable of producing a well cap that would stop the leak. See id. at 6. He contends that the U.S. Navy was able to attach this cap to the leaking well using "scorpion robotic subs." See id. As proof of his contribution to this solution, Hildreth maintains that the face of the well cap used to stop the leak bore the "numeric number 7 insignia" of his think tank. See id. at 6-7. By furnishing his scientific research about the oil spill to the President—research that allegedly proved crucial in plugging the leak—Hildreth claims that he provided a "consulting service" that entitles him to payment in the amount of $731 million.  See id. at 10.

      In support of his claim, Hildreth provides a series of photographs and e-mail exchanges that purportedly prove his involvement in ending the oil spill. The photographs are so distorted as to be incomprehensible, but they are presumably intended to show his insignia's marking on the face of the well cap. See Ex. 1 to Compl. [Docket Entry 1-1] (July 3, 2012) ("Ex. 1"). Hildreth cites e-mail correspondence with various government entities and officials as further evidence of the assistance he provided to the President. See, e.g., Compl. at 3, 10-11. He produces copies of generic form e-mails he received from the White House, the Democratic Party, and the BP Horizon Call Center, and he also includes copies of largely incoherent e-mails he sent to the President and Senator Harry Reid explaining his role in the oil spill and calling

---

¹ Because the complaint is inconsistently paginated and lacks coherent organization, all pinpoint citations refer to the ECF page numbers appearing in the top right-hand corner of the document.

their attention to other environmental disasters. See id. at 3, 5, 10-11, 12, 14-15. To further substantiate his claim, Hildreth also makes reference to records of his alleged telephone calls about the spill with various White House officials. See, e.g., id. at 6. The remainder of the complaint contains links to various news websites that allegedly provide additional support for Hildreth's role in plugging the leak. See, e.g., id. at 9.

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Hildreth's claim for $731 million is not one upon which relief can be granted. See Defs.' Mot. to Dismiss [Docket Entry 7] at 1 (Oct. 22, 2012). Defendants alternatively argue that the case should be dismissed on sovereign immunity grounds. See id. at 1-2. The Court will first address the sovereign immunity argument, because it goes to the Court's subject-matter jurisdiction.[2] The Court will then briefly address defendants' Rule 12(b)(6) argument.

## II. STANDARD OF REVIEW

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. FTC, 456 F.3d 178, 193

---

[2] Because sovereign immunity implicates the Court's subject-matter jurisdiction, the Court construes defendants' sovereign immunity argument as a Rule 12(b)(1) motion, even though defendants do not expressly invoke this rule.

(D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court—Hildreth here—bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (omission in original) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). Determining the plausibility of a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

The pleadings of pro se parties are "'to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson, 551 U.S. at 94 (citation omitted). "[A]lthough a court will read a pro se plaintiff's complaint liberally," such a complaint nevertheless "must present a claim on which the court can grant relief." Chandler v. Roche, 215 F. Supp. 2d 166, 168 (D.D.C. 2002) (citing Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

### III. DISCUSSION

#### A. Sovereign Immunity

Defendants argue that sovereign immunity compels dismissal of this lawsuit. Defs.' Mot. to Dismiss at 5. The Court agrees. The doctrine of sovereign immunity bars any claims against the United States that are not specifically waived.[3] See FDIC v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); see also United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a

---

[3] To the extent that Hildreth is asserting claims against President Obama personally, rather than against the Obama Administration as a whole, those claims are barred by the doctrine of absolute presidential immunity. See Nixon v. Fitzgerald, 457 U.S. 731, 756 (1982). The President was acting in his official capacity in responding to the spill, and hence he is immune from suit for his actions.

prerequisite for jurisdiction."). A waiver of consent cannot be implied, but must be "unequivocally expressed" in statutory text. United States v. Nordic Vill. Inc., 503 U.S. 30, 33-34 (1992) (internal quotation marks omitted). For example, the Federal Tort Claims Act ("FTCA") specifically waives sovereign immunity for certain tort claims against the United States. See 28 U.S.C. § 1346(b)(1). To recover under the FTCA, however, a plaintiff must first exhaust his administrative remedies before filing suit in federal court. See id. § 2675(a); McNeil v. United States, 508 U.S. 106, 113 (1993). Such a showing of administrative exhaustion is a "jurisdictional prerequisite" to maintaining a tort claim against the United States. See GAF Corp. v. United States, 818 F.2d 901, 904 (D.C. Cir. 1987).

Hildreth's complaint does not contain any affirmative showing that he has exhausted his administrative remedies, and therefore to the extent that he is asserting tort claims against the United States, those claims cannot be brought under the FTCA. Consequently, the federal government enjoys immunity from any tort claims Hildreth seeks to assert. For these reasons, the Court must dismiss those claims for lack of subject-matter jurisdiction.

To the extent that Hildreth is alleging a breach of contract, sovereign immunity would also bar his contractual claims. The Tucker Act waives sovereign immunity and vests the United States Court of Federal Claims with jurisdiction over requests for monetary relief against the United States "founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); see also Kidwell v. Dep't of the Army, 56 F.3d 279, 283 (D.C. Cir. 1995). The Little Tucker Act gives district courts concurrent jurisdiction with the Court of Federal Claims if the plaintiff is seeking less than $10,000 in monetary damages. See 28 U.S.C. § 1346(a)(2). If the plaintiff requests more than this amount, however, the Court of Federal Claims enjoys exclusive

jurisdiction. See id.; Kidwell, 56 F.3d at 283-84. Therefore, if the plaintiff seeks damages in excess of $10,000 for breach of an express or implied contract under the Tucker Act, his "only option" is to file his claim with the Court of Federal Claims. See Chandler, 215 F. Supp. 2d at 169; Kidwell, 56 F.3d at 283-84.

Because Hildreth is seeking $731 million in damages, any contract claims for that amount must be filed in the Court of Federal Claims and are not proper here. Hence, the Tucker Act does not provide a waiver of sovereign immunity that would allow this Court to assert jurisdiction over Hildreth's claims. They will consequently be dismissed.

**B. Failure to State a Claim**

Even if sovereign immunity were waived as to any contractual claims asserted by Hildreth, this case would still merit dismissal for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To succeed on a contract claim, Hildreth must show the existence of a contract.[4] See Henke v. Dep't of Commerce, 83 F.3d 1445, 1450 (D.C. Cir. 1996); Carter v. Bank of Am., 845 F. Supp. 2d 140, 144 (D.D.C. 2012). But even when construed liberally under the more relaxed standards for pro se pleadings, the complaint does not contain sufficient factual matter to suggest the existence of a contract that would entitle Hildreth to compensation. Hence, the case must be dismissed.

As the principal support for his claim, Hildreth alleges that his think tank's insignia appears on the face of the well cap used to plug the leak. See, e.g., Compl. at 4; Ex. 1 (purported photographs of the insignia marking on the well cap). He also produces copies of e-mails he sent

---

[4] Defendants have also raised—and rejected—the possibility of an estoppel claim, arguing that the government has never been held liable under a theory of estoppel. See Defs.' Mot. to Dismiss at 4-5 (citing Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947)). Even assuming such a claim could be asserted against the government, however, a party must show that "'(1) there was a definite representation to the party claiming estoppel, (2) the party relied on its adversary's conduct in such a manner as to change his position for the worse, (3) the party's reliance was reasonable[,] and (4) the government engaged in affirmative misconduct.'" Keating v. FERC, 569 F.3d 427, 434 (D.C. Cir. 2009) (quoting Morris Commc'ns, Inc. v. FCC, 566 F.3d 184, 191-92 (D.C. Cir. 2009)). Hildreth has failed to allege any of the elements required for a valid claim, and therefore he cannot recover on estoppel grounds.

to the President and other Democratic officials, as well as the generic form messages he received in response. See, e.g., id. at 3, 12. But nothing about these materials indicates the existence of a contract. Because the complaint does not contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), it cannot survive a motion to dismiss.

## IV.  CONCLUSION

For these reasons, the Court will grant defendants' motion to dismiss. A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  June 17, 2013

8